UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TRACY BLAZIER, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 05-CV-0466-TCK-FHM |
| ) | |
| **ST. JOHN MEDICAL CENTER, INC., a** ) | |
| **not for profit Oklahoma Corporation, and** ) | |
| **REGIONAL MEDICAL LABORATORY,** ) | |
| **INC., a for profit Oklahoma Corporation,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the court is the Motion for Summary Judgment (Dkt. # 23) filed by defendants St. John Medical Center, Inc. ("St. John"), and Regional Medical Laboratory, Inc. ("RML"). Plaintiff Tracy Blazier ("Blazier") seeks relief based on alleged violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 - 2654, as well as negligent retention and supervision under Oklahoma law. More specifically, she alleges that defendants interfered with her right to take leave under the FMLA and retaliated against her when she took leave. She also asserts that defendants negligently retained, supervised or trained the employees responsible for the alleged FMLA interference and retaliation.

**I.      Background**

Blazier was employed by St. John as a medical transcriptionist for RML. She went to the doctor on her day off, March 14, 2005, for some gynecological tests. At the appointment, she told her doctor, Christine Bennett, that she had a sinus infection. The next two days, Blazier notified RML that she was sick and would not be at work. On the second of those two days, a co-worker allegedly saw her and spoke to her at a shopping mall. The co-worker, Rayma Davis, later told

Blazier's supervisor, Sharon McCans, about her alleged encounter with Blazier at the mall. McCans called Blazier and either asked her or told her to report to work the next day. Blazier agreed, and when she arrived at work, McCans and McCans' supervisor, Janna Eslinger, questioned Blazier regarding her absence and the report that she had been seen at the mall the day before. Blazier denied being at the mall on the previous day, March 16, 2005.

McCans and Eslinger later told Blazier that she was being placed in paid leave while they completed their investigation, and that they would telephone her the next day. They also told her not to discuss the matter with anyone. Blazier returned home but communicated with at least two people about the incident. On March 18, 2005, McCans obtained further information from Davis and others in an effort to verify that Blazier was at the mall on the second day she called in sick. The Director of Human Resources at St. John approved the termination of Blazier's employment later in the day on March 18, 2005, allegedly for Blazier's dishonesty and insubordination.

## II.     Standard of Review

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *E.g., Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). If there is no genuine issue of material fact, the Court determines whether the substantive law was correctly applied by the district court. *Id.* (citation omitted). The Court resolves all factual disputes and draw all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250.

### III.    FMLA

The FMLA "entitles eligible employees of covered employers to take up to 12 weeks of unpaid, job-protected leave each year because of, among other things, 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140, 1147 (10th Cir. 2004) (quoting 29 U.S.C. § 2612(a)(1)(D)). To protect employees' substantive rights, the FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). The act also makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the act]." Id. § 2615(a)(2). Plaintiff has alleged both interference and retaliation by defendants.

**A.     Notice**

Initially, the Court notes that plaintiff never requested FMLA leave. The FMLA, and regulations enacted to implement the FMLA, require 30-days advance notice when the need for FMLA leave is foreseeable. See 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.302. When leave is not foreseeable, the employee is required to give notice "as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. . . ." 29 C.F.R. § 825.303(a). There is no indication in this matter that extraordinary circumstances prevented plaintiff from notifying her employer that she needed to take FMLA leave.

An "employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. §§ 825.302(c), 825.303(b). However, the employee must provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.*, § 825.302(c); *see, e.g., Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005); *Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). When an employer is on notice that the employee might qualify for FMLA benefits, an employer is obligated to inform the employee that FMLA coverage may apply. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (citing 29 C.F.R. § 825.208(a)). The critical question in determining whether an employee has satisfied her obligation to provide notice under the FMLA is "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."

4

*Walton*, 424 F.3d at 486 (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

Plaintiff called in sick March 15, and 16, 2005. She told her supervisor on the evening of March 16, 2005 that she was feeling better and intended to return to work the following day. She returned to work on March 17, 2005 and presented a release, dated March 14, 2005, from her doctor which indicated that she had been seen on March 14, 2005 for "sinusitis upper respiratory infection ear infection/fluid in ears." Sections in the release for "Further evaluation/follow-up required" and "Appointment date" were not completed. Plaintiff states that she also took a used bag of tissues with her to show that she was ill.

Merely calling in "sick" is insufficient to provide an employer with notice under the FMLA. *See Walton*, 424 F.3d at 487 (citing *Collins v. NTN -Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) and *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 981 (5th Cir. 1998)). Since plaintiff failed to request FMLA leave or otherwise notify her employer of a medical condition that may have qualified her for FMLA leave, she has failed to establish that she was denied her rights under the FMLA; thus, defendants' termination of her employment did not violate her rights under the FMLA. *See Allender v. Raytheon Aircraft Co.*, 339 F. Supp. 2d 1196, 1205 (D. Kan. 2004); *Laliberte v. BASF Bioresearch Co.*, 337 F. Supp. 2d 271, 278 (D. Mass. 2004); *Speziale v. Bethlehem Area School Dist.*, 266 F. Supp. 2d 366, 376 (E.D. Pa. 2003).[1]

---

[1] The Court acknowledges the *dicta* in *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004), where the Tenth Circuit remarked that the issue of whether proper notice has been given requires a separate analysis from an interference claim since, unlike the Sixth Circuit, the Tenth Circuit does not require notice to prove an interference claim. The *Bones* court relied upon *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002), for the proposition that notice in not part of the analysis for determining interference with FMLA rights, apparently because the *Smith* court noted that deprivation of the FMLA-created right to medical

5

**B.     Interference**

Even if plaintiff were able to show that defendants had enough information to conclude that she was requesting FMLA leave, plaintiff has not shown that a genuine issue of material fact exists as to her claim that defendants interfered with her FMLA rights. In order for plaintiff to establish liability of an employer under § 2615(a)(1), she must show that (1) she was entitled to FMLA leave; (2) some adverse action by her employer interfered with her right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005). Defendants argue that plaintiff cannot establish any of these elements. The Court agrees.

First, no rational trier of fact could find that plaintiff suffered from a "serious health condition" warranting FMLA coverage. The definition of "serious health condition" under the FMLA "means an illness, injury, impairment, or physical or mental condition that involves," in relevant part:

> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any

---

leave is a violation of the FMA regardless of the employer's intent. *Id.* One could argue that notice is relevant to a consideration of whether an employee alleging interference with FMLA rights is entitled to FMLA leave, *see Allender*, 339 F. Supp. 2d at 1205, and thus, that notice is implicit element of an interference claim. Although both parties argue notice, or lack thereof, as part of their argument as to the elements of plaintiff's interference claim, the Court need not determine that notice is an implicit part of the elements of an interference claim for purposes of its ruling on the motion for summary judgment, given that plaintiff has failed to show that genuine issues of material fact exist as to other elements of its FLMA interference and retaliation claims.

>   subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>   * * *
>
>   (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(I); *see Jones*, 427 F.3d at 1319..

Plaintiff now alleges that she was incapacitated from March 13, 2005 to March 17, 2005, but she did not make her employer aware of any incapacitation on March 13th and 14th - the two days she was not scheduled to work - until after she was terminated.[2] Further, there was no indication, again until after she was terminated, that her doctor found her unable to work for a period of more than three consecutive calendar days. Indeed, the doctor's release note indicated that plaintiff could return to work on March 16, 2005. After plaintiff was placed on paid leave, she had her doctor fax a second medical release to McCans, and that second release indicated that plaintiff could return to work on March 17, 2005. The second release did not include any information as to plaintiff's illness or any indication that further evaluation or follow-up was required.

Plaintiff also claims that her treatment on March 14th resulted in a regimen of continuing treatment because her doctor gave her samples for a full course of antibiotics. However, her doctor expressed concerns that plaintiff's illness might have been secondary to a virus and, in that event, antibiotics would not be helpful. Further, plaintiff did not make her employer aware of this

---

[2] Plaintiff relies heavily on a letter by Dr. Bennett, dated March 21, 2005, in which the doctor states that she diagnosed Blazier with Pansinusitis and Reactive Bronchitis on Monday, March 14, 2005, that plaintiff's symptoms had begun the previous Thursday, March 10, 2005, and that plaintiff had a history of sinusitus. *See* Resp. Br., Dkt. # 27, Ex. 1. Dr. Bennett also states that she offered to fax a note to plaintiff's workplace to extend plaintiff's release from work if plaintiff's symptoms did not improve quickly. *Id.* The letter indicates that plaintiff had Eustachian Tube Dysfunction as well, and that being able to hear clearly is very important to a medical transcriptionist. *Id.*

7

"continuing regimen" until after she was terminated. If plaintiff's sinus problem was serious enough to entitle her to FMLA leave, she did not make her employer aware of it, and nothing in the record indicates that the employer should have been aware of it, prior to her termination.

Defendants also argue that there was no adverse action by the employer that interfered with plaintiffs' right to take FMLA leave. Plaintiff argues that she meets this element of an interference claim because (1) defendants failed to inform her of the availability of FMLA leave and (2) when McCans called Blazier on March 16, 2005, McCans did not *ask* her to come to work the next day -- she *told* her to come to work. As to the first argument, the Court has already found that plaintiff failed to provide sufficient information to trigger any duty by the defendants to inform her of her rights under the FMLA. As to the second argument, defendants argue that, when McCans called Blazier on March 16, 2005, Blazier stated that she was feeling better and, if she felt well enough to go to work, she would try to do so. It is highly unlikely that any reasonable person could construe McCans' call as an adverse action that interfered with Blazier's right to take FMLA leave, even if McCans *told* Blazier to report to work, but the Court does not base its decision on this element of an FMLA interference claim.[3] The Court does base its decision on evidence that plaintiff was not entitled to FMLA leave and on undisputed evidence that her termination was unrelated to the exercise or attempted exercise of her FMLA rights.

"[A] reason for dismissal that is unrelated to FMLA leave will not support recovery under an interference theory." *Bones*, 366 F.3d at 878 (citations omitted); *see McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002); *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d

---

[3]Nor does the Court base its decision on any unarticulated or implicit argument that plaintiff's termination itself interfered with her right to take FMLA leave.

723, 732 (10th Cir. 2000); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998).  In particular, "an employee who requests or is on FMLA leave has no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *McBride*, 281 F.3d at 1108 (citing *Renaud*, 203 F.3d at 732); *see Gunnell*, 152 F.3d at 1262; 29 C.F.R. § 825.216(a).  Hence, if the employee would have been terminated regardless of an FMLA request, the employee cannot recover under the prohibition against interference found in 29 U.S.C. §1615(a)(1).

The record is clear that defendants terminated plaintiff's employment because they obtained significant evidence, after investigation, that she had been dishonest and insubordinate.  McCans spoke with Davis about Davis' alleged encounter with Blazier at the mall.  She also obtained a signed statement from Davis and from the friend who was with Davis when the alleged encounter took place.  McCans communicated with Withrow about the report and she coordinated the investigation as he advised.  Withrow and a member of Withrow's security team also interviewed Davis about the encounter.  Further, because Davis reported that Blazier was accompanied by another person whom Davis assumed to be plaintiff's school-age daughter, McCans called the school attended by plaintiff's daughter to inquire about whether the daughter had been absent on March 16, 2006, the date of the alleged encounter at the mall.  McCans maintains that she was told the child was present when attendance was taken but could have left the school during the lunch period.

Plaintiff complains that Withrow did not take into account the grievance she filed after her termination, which included Blazier's typewritten statement, five witness statements attesting to the fact that she was at home all day on Monday, March 16, 2004, and the letter from Dr. Bennett.

9

Withrow reviewed the grievance but did not change the termination decision. More important, none of these allegations demonstrate that plaintiff requested FMLA leave, put defendants on notice that she was requesting FMLA leave when her managers made the initial decision to fire her, or otherwise demonstrate that her termination was related to the exercise or attempted exercise of plaintiff's FMLA rights.

There is some dispute as to whether plaintiff discussed the matter with co-worker Barbara Harrison after McCans and Eslinger told her not to discuss the matter with anyone. However, plaintiff never denied that she contacted her doctor's office as well as a pathologist working at RML, discussed the matter, and even wrote the pathologist an email about the matter. The termination policy in defendants' employee handbook lists dishonesty, insubordination, and refusal to follow direct orders as common reasons for immediate termination of employment. Plaintiff admits that she received a copy of that handbook and knew during her employment that the offenses of dishonesty or insubordination were cause for immediate termination. While defendants' action in terminating plaintiff might seem unduly harsh, the termination was not related in any way to a request for FMLA leave, any attempt by plaintiff to exercise her FMLA rights, or any entitlement plaintiff might have had to the protections of the FMLA. Defendants are entitled to judgment as a matter of law on plaintiffs' claim for interference with her FMLA rights.

**B.     Retaliation**

Plaintiff's retaliation claim is similarly flawed. The Court reviews plaintiff's FMLA retaliation claim under the *McDonnell Douglas* burden-shifting analytical framework. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973)). "In the summary judgment context, Plaintiff must raise a genuine issue of material

fact on each element of his prima facie case." *Id.* (citing *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir. 1996)). To establish a prima facie case of FMLA retaliation, a plaintiff must present evidence showing (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision, and (3) there is a causal connection between the two actions. *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005) (citing *Morgan*, 108 F.3d at 1325)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Chavez*, 396 F.3d at 1104. When the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the employer are a pretext for the retaliatory reason. *Chavez*, 3956 F.3d at 1104.

Here, plaintiff has not established a prima facie case of FMLA retaliation. As set forth above, she did not avail herself of a protected right under the FMLA as she did not request FMLA leave or otherwise provide sufficient information to her employer to reasonably apprise it of her request to take time off for a serious health condition.[4] Although she was affected by an adverse employment decision, as she was terminated from her job, there is no causal connection between any alleged attempt by plaintiff to avail herself of a protected FMLA right and her discharge. The record shows that she was terminated solely for her dishonesty and insubordination.

Thus, even if plaintiff had established a prima facie case, defendants have articulated two legitimate, nondiscriminatory reasons for their employment decision. Because defendants have met

---

[4] Interference and retaliation claims both require the plaintiff to establish a "serious health condition" and a failure to do so defeats both claims. *See Russell v. North Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003).

their burden by offering a non-discriminatory reason for terminating plaintiff, the burden again returns to plaintiff to show pretext. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan*, 108 F.3d at 1323 (citations and internal quotations omitted); *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997) (granting summary judgment on FMLA retaliation claim where the plaintiff did not show that her employer's proffered reason for her termination, poor performance, was pretextual).

Blazier testified to her knowledge that either dishonesty or insubordination could constitute grounds for immediate discharge. Although she denies that she was at the mall on March 16, 2005, the day she called in sick, she admits that she violated her supervisors' instruction not to discuss the matter with anyone. Plaintiff complains that defendants did not instruct other employees not to discuss the matter with anyone, but that fact, even if true, is irrelevant to whether plaintiff disobeyed a direct order from her superiors. When assessing a contention of pretext, the Court examines the facts "as they appear to the person making the decision to terminate [the] plaintiff." *Selenke v. Med. Imagining of Colorado*, 248 F.3d 1249, 1261 (10th Cir. 2001) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir.2000)). The Court may not "second guess the business judgment of the employer." *Id.,* 248 F.3d at 1261 (citing *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)). "Instead, the relevant question is whether the reason articulated by the employer was the real reason for the challenged action." *Id.*

Applying these principles, the Court finds plaintiff has offered no evidence from which a reasonable factfinder could conclude defendant's reasons for terminating her employment were pretextual. Viewing the evidence in a light most favorable to plaintiff, the Court finds there is no genuine issue as to any material fact which would require submission of plaintiff's retaliation claim to a jury. *See Anderson*, 477 U.S. at 249-52. Summary judgment as to plaintiff's FMLA retaliation claim is therefore appropriate.

### IV.   Negligent Retention/Supervision/Training

Plaintiff's state law claim is that defendants failed to adequately train and supervise their management employees in the administration of the FMLA, and that such failure was the proximate cause of plaintiff's damages and "was predicated with wanton disregard for plaintiffs rights." Complaint, Dkt. # 1, at 6, ¶ 36. More specifically, she asserts that McCans, Eslinger and Withrow (the management employees who were responsible for allegedly interfering with plaintiff's FMLA rights or retaliating against her for exercising her FMLA rights) should have recognized the need to inquire further about the seriousness of her illness and, after she filed her grievance on March 21, 2005, they should have considered whether she was entitled to leave under the FMLA or whether she should have been offered FMLA leave. Plaintiff argues that the failure of these managers to offer her FMLA leave or to advise her that she might qualify for FMLA leave led to her termination and proves that they were negligently trained or supervised.

> Under Oklahoma law, a negligent hiring, supervision, or retaining claim is
>
> based on an employee's harm to a third party through employment. An employer is found liable, if -- at the critical time of the tortious incident --, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought. . . . The critical element for

> recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage.

*N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600-01 (Okla. 1999).[5] The Court has found that defendants are entitled to summary judgment on plaintiff's claims that defendants violated her FMLA rights; hence, she was not the victim of any tortious incident based on the facts alleged herein. In any event, there is insufficient evidence in the record to show that defendants had any reason to believe that McCann, Eslinger, or Withrow would create an undue risk of harm to others, namely, violating an employee's FMLA rights.

When McCans became a manager in 2004, she took management classes on various topics, including the FMLA. Since Eslinger became a manager in 1998, she also has taken management classes on various topics, including the FMLA. Withrow has had training on the FMLA and St. John's FMLA policy. He has also taught new employee orientation. Plaintiff asserts that the training for McCans and Eslinger was limited to half a day, but she has not shown that more time was needed to adequately train these managers in administration of the FMLA. She also asserts that Withrow has had no training classes since 2000, but she has not shown that he needed more to be

---

[5]*N.H.* involved a church employee's harm to third parties, specifically, sexual abuse of minor children. It did not arise in the context of alleged employment discrimination. It is not clear whether the Oklahoma Supreme Court would extend the *N.H.* negligent supervision and retention tort to non-physical harm by one employee to another, especially where there is an adequate federal remedy. *See Clinton v. State ex rel. Logan County Election Board*, 29 P.3d 543, 546 (Okla. 2001) (where an employee has an adequate federal remedy for discharge, the employee cannot also bring a discharge claim in violation of Oklahoma public policy); *but see Saint v. Data Exchange*, No. 102,084, 2006 WL1891747 (Okla. July 11, 2006) (unpublished) (allowing a claim for wrongful discharge in violation of Oklahoma public policy as well as an ADEA claim alleging age discrimination). The Restatement (Second) of Torts recognizes the tort of negligent supervision but states that such claim "is applicable only when the servant is acting outside the scope of his employment." Restatement (Second) of Torts, § 317 cmt. A (1965). Clearly, defendants' managers were not acting outside the scope of their employment in relation to the FMLA or the firing of plaintiff.

adequately trained in administering the FMLA. More important, she has not produced any evidence to show that the alleged lack of adequate training for McCans, Eslinger, or Withrow led to a violation of her FMLA rights. Plaintiff's negligent supervision/retention/training claim fails as a matter of law.

**V.     Conclusion**

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (Dkt. # 23) is hereby **granted**. Defendants are entitled to judgment as a matter of law on all claims asserted herein. Judgment in favor of defendants and against plaintiff will be entered separately.

Dated this 7th day of September, 2006.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE